PAULSON, Respondent, vs. MADISON NEWSPAPERS, INC., and others, Appellants.

*December 3, 1956—January 7, 1957.*

For the appellant Madison Newspapers, Inc., there was a brief by *Rogers & Owens* of Portage, and oral argument by *Phillip Owens*.

For the appellants Edward W. Bierer and William Crapp there was a brief by *Riley, Riley & Pierce* of Madison, and oral argument by *Thomas W. Pierce*.

For the respondent there was a brief by *Walker & Bieber* of Portage, and *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Dorothy Walker* and *W. L. Jackman*.

MARTIN, J. The accident happened about 4:30 p. m. on September 14, 1954. The post office is located in the middle of the block on one of the main streets of Lodi; the sidewalk in front of it is approximately 10 feet wide and on the day in question was dry. Plaintiff, carrying a sack of groceries so that the top of the bag was about eye level, crossed the street from a store opposite the post office, stepped up at the curb, took about two steps and fell over the mailsack which she testified lay on the sidewalk 18 to 24 inches from the curb.

Defendant William Crapp made the Madison Newspapers' deliveries to Lodi. He could not recall where he left the sacks on the day in question but testified that he usually carried them across the sidewalk and placed them against the post-office building, which was in compliance

with the instructions of his employer, the defendant Bierer. He ordinarily reached Lodi between 4:15 and 4:30 p. m. when the post office was still open, left the sacks beside the door, and then drove away without notifying the post-office clerk that they were there.

Arthur Radl, the post-office clerk on duty at the time in question, testified the bag over which the plaintiff fell was from four to eight inches from the curb; that on many occasions he had observed Crapp take the sacks from his car and put them on the edge of the sidewalk: "he always did it this way." It was Radl's practice to go out and bring the sacks into the post office.

One Gerald Klingbeil, who saw the accident, testified that the sack over which the plaintiff fell was about two feet from the curb.

The jury found that Crapp was causally negligent "as to leaving the bag or bags of newspapers on the sidewalk as he did at the time and place in question." It found the plaintiff causally negligent with respect to lookout and with respect to the place of entering upon the sidewalk. The apportionment of negligence was 15 per cent to the plaintiff and 85 per cent to Crapp.

Sec. 62.17 (1), Stats., provides:

"The streets shall be divided into a carriageway and a sidewalk on each side thereof; the sidewalk shall be for the use of persons on foot, and no person shall be allowed to incumber the same with boxes or other material; but such sidewalk shall be kept clear for the uses specified herein."

The rule respecting the right to obstruct a sidewalk is set forth as follows in 25 Am. Jur., Highways, p. 599, sec. 307:

"One of the uses, and the temporary obstruction incident thereto, to which . . . sidewalks are lawfully subject as of necessity is the loading or unloading of goods in the

course of the transportation or delivery thereof to or from the abutting premises, including, as incidental thereto, the right to deposit such goods temporarily . . . on the sidewalk. In order to be permissible, however, such use and the consequent obstruction must be both necessary with reference to the business of the user and reasonable with reference to the rights of the public and of other abutting owners, . . ."

Whether a particular use is reasonable and necessary is for the jury, since all the facts and circumstances which affect the situation are to be considered. See *Jochem v. Robinson* (1886), 66 Wis. 638, 29 N. W. 642; *Trester & Trester v. Kahn* (1926), 189 Wis. 60, 205 N. W. 826. The trial court here instructed the jury:

"You are further instructed that the law recognized that the owner of property, even though it be situated upon a public street, has a right of ingress and egress to and from his premises, that is, he has a right to come and go from his premises and may make a reasonable and temporary and necessitous use of the premises including the walk along the building, if such use can be made subject to reasonable regulations in the public interest and for the promotion of public convenience and safety.

"It is your duty to consider the location of the bag or bags on the sidewalk, the length of time it was left there, the necessity of leaving it or they there, and whether such act could be done and was done without violating the public interest, convenience, and safety."

From the evidence in this record the jury could conclude that it was not reasonably necessary for Crapp to leave the mailbags on the sidewalk. The post office was open and he could easily have carried the bags inside or placed them against the building. Radl testified he generally carried four such bags at a time if there were that many. There is no evidence that any circumstances existed at the time in question which would have made it difficult or inconvenient to take the bags into the post office or out of the

path of pedestrians; but Crapp merely placed them on the sidewalk and abandoned them without notice to the postal employees. It makes no difference how long the bags were there. Crapp's negligence was in putting them on the traveled portion of the walk and abandoning them without any warning to users of the walk.

It is argued that plaintiff's negligence was equal to or greater than that of the defendants, as a matter of law. There is no question that the jury's findings of negligence on her part are supported by the evidence, but it is not for us to compare such negligence with the defendants'. The comparison is peculiarly within the province of the jury. The sack of groceries plaintiff carried blocked her vision of the ground in front of her for about ten paces, but her lack of lookout was not complete; and while there was nothing to obstruct her view of the mailbag as she crossed the street, there was evidence that the bag was about the same color as the sidewalk. A disinterested witness testified that from a distance of 50 feet he did not see the bag until plaintiff fell.

Defendants contend it was prejudicial error to admit testimony as to custom. Since Crapp testified he could not recall where he put the papers on September 14, 1954, except that "I unloaded my papers and drove off," and there is no dispute that the sack over which the plaintiff fell contained the defendants' papers, the evidence as to custom was admissible. See 1 Wigmore, Evidence (3d ed.), pp. 519, 530, 533, secs. 92, 97, 98. Authorities cited by the defendants are not in point.

Question V of the special verdict inquired:

"On September 14, 1954, when driver Crapp placed a bag or bags of newspapers on the sidewalk in front of the Lodi post office, was he acting as an agent of Madison Newspapers, Incorporated, as well as agent of Madison Transit Company? Answer: Yes."

As defined in Restatement, 1 Agency, p. 7, sec. 1:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Madison Newspapers maintains that Bierer was an independent contractor.

Madison Newspapers obtained authority from the postmaster general to transport mail to certain post offices at its own expense. For many years the defendant Bierer, under an oral contract with Madison Newspapers, hauled its papers to such post offices upon terms agreed upon with the circulation manager. Bierer testified that Madison Newspapers determined the pickup and delivery schedules, established the routes, and directed the details of delivery. As to the afternoon Lodi delivery, it specifically directed that the papers were to be left in front of the post office, an instruction which was relayed to the driver Crapp by Bierer. He further testified that Madison Newspapers gave him directions as to the equipment he used and its maintenance and made suggestions as to the hiring and firing of drivers, which suggestions Bierer followed. On occasion the Bierer vehicles hauling for Madison Newspapers also carried papers for the Milwaukee Journal, but the Milwaukee Journal exercised no control over the deliveries, and payments by Madison Newspapers to Bierer were reduced by any amount the Journal paid him for such hauling. Bierer further testified that for three years, when he was unable to carry his own workmen's compensation, Madison Newspapers included his pay roll in its account.

From all of this evidence the jury could properly conclude that the relationship of agency existed between Madison Newspapers and Bierer's firm. See *Sempier v. Goemann* (1917), 165 Wis. 103, 161 N. W. 354.

Even if Bierer was an independent contractor, however, Madison Newspapers would be liable for the negligence of Crapp since there is credible evidence that Crapp, in placing the mailsack on the sidewalk in front of the Lodi post office, was following the explicit directions given to him by Madison Newspapers through Bierer, his employer. The rule, as given in Restatement, 1 Agency, p. 460, sec. 212, is:

"A person is subject to liability for the consequences of another's conduct which results from his directions as he would be for his own personal conduct if, with knowledge of the conditions, he intends the conduct, or if he intends its consequences, except where the one directing or the one acting has a privilege or immunity not available to the other.

"Comment:

"*a.* The rule stated in this section is not dependent upon the law of agency but results from the general rule, stated in the Restatement of Torts, that one causing and intending an act or result is as responsible as if he had personally performed the act or produced the result. . . ."

Crapp's negligent act was that which he was directed to do by Madison Newspapers. That being so, even though Crapp's employer were an independent contractor, Madison Newspapers is liable for the consequences of the act.

" 'If a contractor faithfully performs his contract, and a third person is injured by the contractor in the course of its due performance, or by its result, the employer is liable, for he causes the precise act to be done which occasions the injury.' " Anno., 21 A. L. R. 1231, and cases cited thereunder.

In *Carlson v. Stocking* (1895), 91 Wis. 432, 65 N. W. 58, it was held (syllabus 1):

"One person who employs another to furnish materials and do specific work as an independent contractor is not, as a general rule, liable for injuries caused by the sole negligence of such contractor or his servants; but where the

performance of the work in the ordinary mode necessarily or naturally resulted in producing the defect or nuisance which caused the injury, the employer is subject to the same liability to the injured person as the contractor."

See also *Hackett v. Western Union Tel. Co.* (1891), 80 Wis. 187, 193, 49 N. W. 822.

Madison Newspapers contends that it was prejudiced by duplication in the special verdict as to agency. The argument is based on the premise that it could be held liable only on proof of agency. As held by the authorities cited immediately above, Madison Newspapers could be liable even though agency were not estabilshed. If the questions were in fact duplicitous, it was immaterial and defendant was not prejudiced thereby. In any event, it made no objection to inclusion of both questions in the verdict.

Said defendant also contends that separate questions on negligence and nuisance were duplicitous. The jury found both negligence and nuisance but the instructions made it clear that the jury was to consider only negligence in making its apportionment.

There was no error in the instruction on agency. Conceding it was proper, defendants argue that it should have been elaborated as to the extent of control required to create agency, but they requested no such elaboration in their request for instructions and cannot now complain.

*By the Court.*—Judgment affirmed.