**Kenneth E. NELSON, Plaintiff–Appellant,**

v.

**Eugene N. BULSO, Jr., Defendant–Appellee.**

No. 98–1076.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1998.

Decided July 22, 1998.

Gordon P. Giampietro (argued), Michael, Best & Friedrich, Milwaukee, WI, for Plaintiff–Appellant.

Mark F. Foley (argued), Foley & Foley, Milwaukee, WI, for Defendant–Appellee.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The issue in this diversity case is whether Wisconsin courts have personal jurisdiction over a Tennessee lawyer who suggested that a Tennessee prosecutor investigate a Wisconsin resident, when the investigation culminated in an indictment in Tennessee and an arrest and extradition proceedings in Wisconsin. We hold that because the Tennessee lawyer did not commit any acts relevant to the alleged torts of malicious prosecution, abuse of process or defamation within Wisconsin, the tort provision of the Wisconsin long-arm statute, Wis. Stat. § 801.05(3), does not apply.

## Background

The defendant thought that his local district attorney would like to know about some developments in his clients' lawsuit against companies controlled by the plaintiff. He mailed a letter alleging that after a jury had awarded his clients over a million dollars in damages against the plaintiff's companies, but before the entry of judgment, one of the companies transferred a valuable asset to a partnership of which the plaintiff was general partner: "We bring these matters to your attention because the purported ... assignment may well constitute a Class E felony under Tenn.Code Ann. § 39–14–116 (Exhibit

5). [My clients] wish to bring criminal charges against [the plaintiff and one of his companies] if, after investigating this matter, the District Attorney's Office is of the view that a violation of Section 39–14–116 has occurred." Def.-Appellee's App. 10. About six months later, the defendant testified before a Tennessee grand jury, which indicted the plaintiff; a Tennessee arrest warrant was issued. A few weeks after the Tennessee indictment, the Nashville police asked the police in the plaintiff's home town of Mequon, just north of Milwaukee, to arrest him. They obliged, going out to the plaintiff's house one summer evening to take him for an overnight stay at the county jail. The next morning the plaintiff was released on $10,000 bail. In the fall, Tennessee asked Wisconsin to extradite the plaintiff. While that request was pending before the governor of Wisconsin, however, the district attorney in Tennessee terminated the prosecution. A few days later, a Tennessee appeals court vacated the civil judgment in the defendant's clients' case against the plaintiff, and remanded for a retrial.

The present action began with a complaint filed in Wisconsin state court. The plaintiff charged the defendant with malicious prosecution, abuse of process and defamation. The defendant removed the action to federal court, and moved for dismissal for lack of personal jurisdiction or to transfer venue to the Middle District of Tennessee. The district court dismissed the case for lack of personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2); 979 F.Supp. 1239 (E.D.Wis.1997). In an unpublished epilogue to the decision, the court amended the judgment from dismissal with prejudice to without prejudice. *See* Fed.R.Civ.P. 41(b).

### Discussion

■ We have jurisdiction to review the district court's dismissal, though it was without prejudice, since it was pursuant to Rule 12(b)(2). *See Brady v. Sullivan,* 893 F.2d 872, 876 n. 8 (7th Cir.1989) (per curiam). The judgment was based on the facts in the plaintiff's complaint and an affidavit submitted by the defendant, so our review is plenary. *See RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997); *Noonan v. Winston Co.,* 135 F.3d 85, 89 (1st Cir. 1998). The extent of the district court's personal jurisdiction turns on the scope of the Wisconsin long-arm statute, Wis. Stat. § 801.05, subject to federal constitutional limitations. *See RAR,* 107 F.3d at 1275; *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1359–60 (7th Cir.1996).

■ On appeal the plaintiff's principal argument is that the defendant is subject to Wisconsin's jurisdiction under subsection 3 of the long-arm statute. That provision applies to "any action claiming injury to person or property within or without [Wisconsin] arising out of an act or omission within [Wisconsin] by the defendant." Wis. Stat. § 801.05(3). The crux of the matter is therefore whether the defendant "acted" in Wisconsin. "[A]ny person's acts for which acts the defendant is legally responsible" are attributed to the defendant. *Id.* § 801.03(1); *see Pavalon v. Fishman,* 30 Wis.2d 228, 140 N.W.2d 263, 266 (1966). For tort law purposes, the defendant is responsible for the conduct of other actors if he directed that conduct. *See Paulson v. Madison Newspapers,* 274 Wis. 355, 80 N.W.2d 421, 425 (1957). (This at least is the criterion for physical torts, and the parties have not distinguished between physical and nonphysical torts.)

■ The relevant conduct is behavior that would constitute an element of an alleged offense. *Cf. Allred v. Moore & Peterson,* 117 F.3d 278, 285 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998). Malicious prosecution occurs when the defendant initiates legal proceedings without probable cause; this must have been done maliciously, and the proceedings must have terminated in the plaintiff's favor. *See Strid v. Converse,* 111 Wis.2d 418, 331 N.W.2d 350, 353–54 (1983); *Donaldson v. Donaldson,* 557 S.W.2d 60, 62 (Tenn.1977). Abuse of process is the misuse of legal process for an improper purpose. *See Strid,* 331 N.W.2d at 355; *Donaldson,* 557 S.W.2d at 62. Defamation occurs upon each distinct publication of a defendant's false and defamatory statement. *See Torgerson v. Journal/Sentinel, Inc.,* 210 Wis.2d 525, 563 N.W.2d 472,

477 (1997); *Applewhite v. Memphis State Univ.*, 495 S.W.2d 190, 192, 194 (Tenn.1973); *Gibbons v. Schwartz–Nobel*, 928 S.W.2d 922, 926–27 (Tenn.Ct.App.1996).

■ In this case, no relevant conduct occurred in Wisconsin. Take the malicious prosecution claim. The defendant allegedly *initiated* legal proceedings only in Tennessee. The extradition proceedings and the plaintiff's arrest in Wisconsin were part of the legal proceedings begun in Tennessee. Similarly, the overt acts alleged in the abuse of process count—"Bulso misrepresented the facts concerning the alleged crime to the District Attorney General and the Grand Jury of Davidson County, Tennessee," *see* App. of Pl.-Appellant 50—took place in Tennessee. And the same is true of the alleged false statements and initial publication at issue in the defamation count. *Id.* Perhaps false statements were repeated via conduct in Wisconsin. *See Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis.2d 372, 302 N.W.2d 68, 72 (1981); Restatement (Second) of Torts (1977) § 576; *cf. id.* § 568 cmt. d. But even assuming the defendant intended the plaintiff to be arrested in Wisconsin, the defendant cannot be said to have directed the plaintiff's arrest. The arrest in Wisconsin is too remote from the criminal complaint in Tennessee. Indeed, we doubt that even the plaintiff's Tennessee indictment can be said to be the "natural and probable consequence" of the defendant's conduct.

■ We do not foreclose the possibility that for tort law purposes a private individual might direct a public official to undertake specific actions through bribery, extortion, physical threats or a misrepresentation of fact. For example, if following an assassination the defendant had falsely identified the plaintiff as the gunman to a secret service agent, knowing the plaintiff was not involved, perhaps it might be said that the defendant compelled the plaintiff's arrest. *Cf. Simon v. United States*, 644 F.2d 490, 498 (5th Cir. 1981) (concluding federal marshals served subpoena as a "direct result[ ]" of the defendant's actions). But where, as here, there is an opportunity for intervening voluntary acts by public officials, their actions are not directed by private individuals. The complaint does not identify any contact between the defendant and Tennessee authorities after the plaintiff's indictment. The plaintiff's Wisconsin arrest occurred almost a month later; according to the complaint, it was made at the "request of the Nashville, Tennessee Police Department." App. of Pl.-Appellant 44. There is no basis for concluding that the plaintiff was arrested in Wisconsin at the defendant's direction, or that the defendant played any role in the attempted extradition. Therefore, if the arrest did constitute a republication of defamatory comments by the defendant, the republication was the act of third parties, not of the defendant. The defendant might be liable for any injury resulting from republication in Wisconsin. But because he did not direct the republication, it was not his act. *Cf. Jones v. Calder*, 138 Cal.App.3d 128, 187 Cal.Rptr. 825, 830 (1982), *aff'd*, 465 U.S. 783, 791, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

The plaintiff relies principally on two cases, *Simon* and *Ziegler v. Indian River Co.*, 64 F.3d 470 (9th Cir.1995). *Simon*, applying Louisiana's civilian law, concluded that the defendant acted in Louisiana through federal marshals who served a subpoena in that state. The subpoena was prepared by the federal marshals in Louisiana according to the instructions of their supervisors in Georgia. The court assumed that the supervisors acted at the defendant's request. *See Simon*, 644 F.2d at 495 n. 8.

*Simon* is distinguishable on at least two grounds. First, the relationship between the defendant and the conduct of the forum-state actors is much more attenuated in the present case. The court in *Simon* assumed that the federal marshals acted according to the defendant's instructions within two days. In this case there are no grounds for supposing that any of the actions of Wisconsin officials followed instructions from the defendant to anyone, and the lag between any alleged conduct of the defendant and of Wisconsin officials is much greater.

The second basis for distinguishing *Simon* is that the actions of the Louisiana marshals were attributed to the defendant via agency and conspiracy principles which are inapplicable here. The Louisiana federal marshals

were subordinates, and therefore agents, of the federal marshals in Georgia. The court treated the Georgia marshals as coconspirators with the *Simon* defendant, *id.*, making that defendant responsible for the actions of the Georgia marshals and their agents. *See Stauffacher v. Bennett,* 969 F.2d 455, 459 (7th Cir.1992); *Textor v. Board of Regents,* 711 F.2d 1387, 1392–93 (7th Cir.1983); *Cherokee Labs. v. Rotary Drilling Servs.,* 383 F.2d 97, 103 (5th Cir.1967). In this case there are no allegations of a conspiracy between the defendant and any state officials, such as that which formed the basis for an agency relationship between the defendant and the forum-state actors in *Simon. Cf. United States v. Cabrales,* — U.S. —, 118 S.Ct. 1772, 1776–77, 141 L.Ed.2d 1 (1998). This sufficiently distinguishes *Ziegler* too. *See* 64 F.3d at 474.

■ The plaintiff also relies on the revision notes to subsection 3 of the long-arm statute to contend that it is enough that the defendant caused an act to be done in Wisconsin: "The doing of an act, or *causing it to be done,* is a substantial contact with [Wisconsin]." Wis. Stat. Ann. § 801.05 Revision Notes—1959, at 59 (West 1977) (emphasis added). But the first sentence of the discussion indicates that the reference to causing an act to be done applies to the actions of an agent of the defendant: "Two jurisdictional facts are required by this subsection: (i) an act or omission within the state by the defendant *or his agent;* and (ii) a claim of injury to person or property alleged to arise out of the local act or omission." *Id.* (emphasis added). The plaintiff concedes that no agent of Bulso acted in Wisconsin. And we have concluded that the defendant himself did not act in Wisconsin by directing the actions of Wisconsin officials. Subsection 3 of the long-arm statute does not apply.

■ We reject the plaintiff's argument that "in the absence of any Wisconsin case on point" we "must necessarily find that the exercise of personal jurisdiction would offend the due process clause." Br. of Pl.-Appellant 10. A lack of case law directly on point does not mean that the long-arm statute is satisfied in the present case. It may just reflect the failure of a comparable case to have come before the Wisconsin Supreme Court. And unless the plaintiff establishes jurisdiction under the long-arm statute (or some other Wisconsin jurisdictional statute), a due process inquiry is superfluous. *See Lincoln v. Seawright,* 104 Wis.2d 4, 310 N.W.2d 596, 601 (1981).

■ The plaintiff also contends that the district court erred in denying a request for jurisdictional discovery. In a document captioned "Motion for Leave to File a Surreply Brief," the plaintiff mentioned that he was also "seek[ing] leave to conduct limited discovery." After the court granted the plaintiff's motion to file a surreply brief, it sent the parties a letter clarifying that the court

> did not purport to resolve the plaintiff's noncaptioned request for leave to conduct limited discovery. Pursuant to Rule 7(b)(1), Federal Rules of Civil Procedure, it would have been inappropriate for the court to have treated the reference to conducting limited discovery as a formal motion. Accordingly, I will not address the matter until such a motion is filed.

Br. of Pl.-Appellant A7. The plaintiff never filed a separate motion for leave to conduct discovery; there is no dispute about that. Thus the issue is not whether the district court properly denied a motion, but whether it was within the court's discretion to insist that the motion take a particular form.

■ Whether or not Rule 7(b)(1) requires or contemplates separately captioned motions, *see* Fed. R. Civ. P. 7(b)(2), 10, 84 & app. of forms, introductory statement 2, forms 1, 19, 23, it is within the district court's discretion in supervising pretrial proceedings to require that motions be made in that form if the court gives a party a sufficient opportunity to comply. *Cf. Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1171–72 (7th Cir.1998). The plaintiff does not argue that the district court's instruction was unreasonable: the potential advantages in avoiding confusion and misunderstanding are obvious. This is not a case in which a party's right to file a motion was lost because of a lack of flexibility on the part of the district court. No deadline was involved. The district court did not enter its final order until almost five months after it

informed the plaintiff of the need to file a separate discovery motion. Under these circumstances, the plaintiff was not prejudiced by the district court's requirement, and so it is not a basis for reversal.

The judgment is AFFIRMED.