**HY CITE CORPORATION, Plaintiff,**

v.

**BADBUSINESSBUREAU.COM, L.L.C. d/b/a Badbusinessbureau.Com and/or Ripoffreport.com, Defendant.**

No. 03–C–0421–C.

United States District Court, W.D. Wisconsin.

Jan. 8, 2004.

John C. Scheller, Michael Best & Freidrich, LLP, Madison, WI, for Plaintiff.

Sonali S. Srivastava, Lafollette, Godfrey & Kahn, Madison, WI, Maria Crimi Speth,

Jabur & Wilk, P.C., Phoenix, AZ, for Defendant.

## ORDER

CRABB, Chief Judge.

Defendant badbusinessbureau.com owns and operates a website that displays consumer complaints against various businesses. In this civil action, plaintiff Hy Cite Corporation contends that by operating this website, defendant has engaged in unfair competition, false advertising, disparagement and trademark infringement in violation of state and federal law. Now before the court is defendant's motion to dismiss the case for lack of personal jurisdiction. Subject matter jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

I conclude that plaintiff has failed to show that defendant has sufficient contacts with Wisconsin to satisfy the personal jurisdiction requirements of the Fourteenth Amendment's due process clause. Accordingly, plaintiff's motion to dismiss for lack of personal jurisdiction will be granted.

For the sole purpose of deciding this motion, I find as facts the following material facts from the allegations in the complaint and the averments in the affidavits. *See Purdue Research Foundation v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir.2003) (court accepts all well-pleaded allegations in complaint as true, unless controverted by challenging party's affidavits; any conflicts concerning relevant facts are to be decided in favor of party asserting jurisdiction).

## JURISDICTIONAL FACTS

Plaintiff Hy Cite Corporation is a Wisconsin corporation with a principal place of business in Madison, Wisconsin. Plaintiff markets and sells china and porcelain dinnerware, glass beverageware, cookware and related products under its Royal Prestige trademark.

Defendant badbusinessbureau.com is a limited liability company organized and existing under the laws of St. Kitts/Nevis, West Indies. Defendant does not own any assets in Wisconsin or have any offices or employees in the state. Defendant owns and operates a website, "The Rip–Off Report," located at http://www.badbusinessbureau.com. The website operates primarily as a forum for consumer complaints about various businesses. Consumers submit complaints, or "rip-off reports," about a product or service; defendant posts the complaints on its website. Consumers have submitted at least 61,000 complaints to defendant. Plaintiff's products have been the subject of 30 to 40 of these complaints.

Subjects of a consumer complaint may post a rebuttal. Defendant screens the rebuttals and charges a $25 fee to post more than four of them. No Wisconsin company has purchased a rebuttal. In addition to posting rebuttals, subjects of a complaint may enroll in defendant's "Corporate Customer Advocacy Program," which is advertised on its website.

Plaintiff contacted defendant on June 24, 2003, by e-mail to inquire about ways of resolving the consumer complaints posted on defendant's website. In a July 11, 2003 e-mail, defendant informed plaintiff of the advocacy program. After determining the number of complaints posted against plaintiff, defendant informed plaintiff that the cost of enrollment would consist of an initial $30,000 fee and an additional $20,000 at a later time. Plaintiff did not enroll in this program. No other Wisconsin company has enrolled.

Defendant's website serves several functions apart from the consumer complaint and rebuttal forum. First, any company may purchase ad space on defendant's

website. No Wisconsin company has purchased any ad space. Second, defendant's website displays a link to purchase a book, *Rip–Off Revenge Guide.* One Wisconsin resident has purchased the book. Third, defendant solicits donations for the company on its website. Defendant does not recall whether the company has received any donations from Wisconsin. Fourth, defendant's website allows website viewers to enlist as volunteer "rip-off reporters." Finally, defendant offers to contact consumers who post rip-off reports if a class action suit is being considered against the company about which the consumer complained. Defendant has not organized any class action suits in Wisconsin.

## OPINION

### A. *General Principles*

On a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the burden of proof rests on the party asserting jurisdiction. *Hyatt International Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002). Unless the court holds an evidentiary hearing, a party meets this burden by making a prima facie showing that personal jurisdiction exists. *Id.*

A federal court has personal jurisdiction over a non-consenting, nonresident defendant to the extent authorized by the law of the state in which that court sits. *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 664 (7th Cir.1986). This rule applies in diversity and federal question cases, unless the federal statute at issue permits nationwide service or the defendant is not subject to personal jurisdiction in any state in the United States. Fed.R.Civ.P. 4(k); *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1201–02 (7th Cir.1997); *see also Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). Neither of the exceptions apply to this case. Nationwide service of process is not authorized under any of the statutes at issue in this case. Defendant admits that it could be sued in Arizona because it maintains a distribution center in that state.

Generally, Wisconsin courts require plaintiffs to satisfy the requirements of the state's long-arm statute, Wis. Stat. § 801.05, as well as the due process clause of the United States Constitution. *Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996). Both parties appear to assume that the Wisconsin long-arm statute extends as far as due process. As a result, they have focused almost entirely on the requirements of the Constitution. The parties' assumption may be erroneous. In a number of recent decisions, courts in Wisconsin have analyzed the requirements of § 801.05 separately from the requirements of due process. *See, e.g., Kopke v. A. Hartrodt S.R.L.,* 2001 WI 99, ¶ 8, 245 Wis.2d 396, 629 N.W.2d 662; *Bushelman v. Bushelman,* 2001 WI App 124, ¶ 7, 246 Wis.2d 317, 629 N.W.2d 795. However, because I conclude that plaintiff has failed to meet the constitutional requirements for jurisdiction, it is unnecessary to decide whether plaintiff has met the requirements of Wis. Stat. § 801.05. *See Steel Warehouse of Wisconsin, Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir.1998).

Due process requires that a nonresident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The contacts between the defendant and the forum state may not be "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Instead, "the suffi-

ciency of the contacts is measured by the defendant's purposeful acts." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 580 (7th Cir. 1994). The minimum contacts with the forum state must be the result of the defendant's purposefully availing itself of the privilege of conducting business in the forum state, thereby invoking the protections and benefits of the forum state's law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Medical Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir.2002). The minimum contacts requirement serves two objectives: "[i]t protects against the burdens of litigation in a distant or inconvenient forum" unless the defendant's contacts make it just to force him or her to defend there, and "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Depending on the nature of the contacts, a court may exercise general or specific jurisdiction. When the defendant's contacts with the state are sufficiently continuous, systematic and general, the court may exercise jurisdiction over the defendant in any suit based on any controversy. *International Medical Group,* 312 F.3d at 846. When a defendant's contacts with the state are more limited, but are related to or give rise to the specific controversy in issue, a court may exercise specific jurisdiction over the defendant with respect to that controversy. *Logan Productions,* 103 F.3d at 52. Because the implications are far greater, the constitutional standard for general jurisdiction is considerably more stringent than the standard for specific jurisdiction. *Purdue Research Foundation,* 338 F.3d at 787.

### B. *Personal Jurisdiction and the Internet*

■ Almost fifty years ago, the United State Supreme Court noted that federal courts should be sensitive to changes in technology, communication and transportation when conducting a personal jurisdiction analysis. *Hanson,* 357 U.S. at 250–51, 78 S.Ct. 1228. These constant changes demand a flexible constitutional standard that can evolve alongside society. *Id.* at 251, 78 S.Ct. 1228 (citing *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565, and *International Shoe,* 326 U.S. 310, 66 S.Ct. 154). Nevertheless, the Court has rejected a view that technological advances will lead to "the eventual demise of all restrictions on the personal jurisdiction of state courts." *Id.*

The Court's advice in *Hanson* still applies today, and particularly in this case, which requires consideration of the appropriate reach of jurisdiction in the internet context. The internet is an exemplar of recent technological progress that tests the personal jurisdiction standard developed by *International Shoe* because it is not restricted by distance or territorial boundaries. *Reno v. American Civil Liberties Union,* 521 U.S. 844, 851, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (noting that "cyberspace" is accessible to anyone, located anywhere, with internet connection). The accessibility and breadth of internet use make it a unique mode of communication and conducting business. "Unlike newspaper, mailing, radio, television and other media containing advertisements and solicitations, most Internet advertisements and solicitations are not directed at a specific geographic are[a] or marke[t]; to the contrary, advertising on the Internet targets no one in particular and everyone in particular in any given geographic location." *Millennium Enterprises., Inc. v.*

*Millennium Music, LP*, 33 F.Supp.2d 907, 914 (D.Or.1999).

For several years courts have struggled to determine the appropriate test for personal jurisdiction when a defendant's contacts with the forum state are primarily through the internet. One early attempt can be found in *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F.Supp. 161 (D.Conn.1996). The plaintiff sued the defendant in Connecticut, contending that the defendant's domain name for its website infringed the plaintiff's trademark. The defendant's only alleged contact with Connecticut was its website, which it used to advertise its products. Although there was no evidence in the record that the defendant targeted Connecticut residents or even that any Connecticut residents had accessed the defendant's website, the district court concluded that exercising jurisdiction would be consistent with due process because Connecticut residents *could* access the defendant's website. *Id.* at 165 ("Advertisement on the Internet can reach as many as 10,000 Internet users within Connecticut alone. . . . [The defendant] has therefore purposefully availed itself of the privilege of doing business within Connecticut.") As many courts now recognize, the problem with the approach in *Inset Systems* is that it would allow anyone with a website to be sued *anywhere* in the world, even in jurisdictions to which the website was not expressly aimed, because access to a website is not limited geographically. *See Digital Control, Inc. v. Boretronics, Inc.*, 161 F.Supp.2d 1183, 1186 (W.D.Wash. 2001); *Millennium Enterprises*, 33 F.Supp.2d at 922; *Rothschild Berry Farm v. Serendipity Group LLC*, 84 F.Supp.2d 904, 908–10 (S.D.Ohio 1999); *E–Data Corp. v. Micropatent Corp.*, 989 F.Supp. 173, 177 (D.Conn.1997).

Cognizant of the potential dramatic effect that the Internet could have on the law of personal jurisdiction, other courts have adopted specialized tests that attempt to place manageable limits on a state's reach over defendants that maintain websites. The most prevalent of these tests was first enunciated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). The court concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. The court set out a sliding scale of website interactivity to determine whether personal jurisdiction should be exercised. On one end of the spectrum are defendants that "clearly" conduct business over the internet. In other words, the "defendant enters into contacts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet. . . ." *Id.* At this end, personal jurisdiction is proper. At the opposite end of the spectrum are defendants whose websites are "passive," meaning that the "defendant has simply posted information on an Internet Website which is accessible to users in foreign jurisdictions." *Id.* In this situation, personal jurisdiction is not proper. In the middle are defendants whose websites allow internet users to interact with the website by exchanging information. Whether personal jurisdiction should be asserted over defendants falling into this middle ground depends on "the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.*

The *Zippo* test has proved to be influential. Courts across the country have adopted the sliding scale approach, at least nominally, in personal jurisdiction cases involving internet contacts. *See, e.g., Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452–54 (3d Cir.2003); *ALS Scan v.*

*Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir.2002); *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir.2002); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002); *Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1296–97 (10th Cir. 1999); *Multi–Tech Systems, Inc. v. Vocal-Tec Communications, Inc.*, 122 F.Supp.2d 1046, 1050 (D.Minn.2000); *Nida Corp. v. Nida*, 118 F.Supp.2d 1223, 1229–30 (S.D.Fla.2000).

The Court of Appeals for the Seventh Circuit has not yet decided a personal jurisdiction case in the internet context, though several district courts in this circuit have followed *Zippo*. *E.g., Aero Products International, Inc. v. Intex Corp.*, 2002 WL 31109386 (N.D.Ill. Sep.20, 2002); *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F.Supp.2d 824, 833 (N.D.Ill.2000). I am reluctant to fall in line with these courts for two reasons. First, it is not clear why a website's level of interactivity should be determinative on the issue of personal jurisdiction. As even courts adopting the *Zippo* test have recognized, a court cannot determine whether personal jurisdiction is appropriate simply by deciding whether a website is "passive" or "interactive" (assuming that websites can be readily classified into one category or the other). Even a "passive" website may support a finding of jurisdiction if the defendant used its website intentionally to harm the plaintiff in the forum state. *See Panavision International, LP v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998). Similarly, an "interactive" or commercial website may not be sufficient to support jurisdiction if it is not aimed at residents in the forum state. *See GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349–50 (D.C.Cir.2000). Moreover, regardless how interactive a website is, it cannot form the basis for personal jurisdiction unless a nexus exists between the website and the cause of action or unless the contacts through the website are so substantial that they may be considered "systematic and continuous" for the purpose of general jurisdiction. Thus, a rigid adherence to the *Zippo* test is likely to lead to erroneous results.

Second, in *Zippo*, the court did not explain under what authority it was adopting a specialized test for the internet or even why such a test was necessary. The Supreme Court has never held that courts should apply different standards for personal jurisdiction depending on the type of contact involved. To the contrary, the Court "long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe*, 326 U.S. at 319, 66 S.Ct. 154). The purpose of the "minimum contacts" test set forth in *International Shoe* was to create a standard flexible enough that specialized tests were not needed. As one judge in this circuit has observed in the context of writing about technology, specialized tests are often "doomed to be shallow and to miss unifying principles." Frank H. Easterbrook, *Cyberspace and the Law of the Horse*, U. Chi. Legal F. 207, 207 (1996). "[T]he best way to learn the law applicable to specialized endeavors is to study general rules." *Id.* Other courts have rejected *Zippo* while noting that traditional principles of due process are sufficient to decide personal jurisdiction questions in the internet context. *See, e.g., Winfield Collection, Ltd. v. McCauley*, 105 F.Supp.2d 746, 750 (E.D.Mich.2000) ("[T]he need for a special Internet-focused test for 'minimum contacts' has yet to be established. It seems to this court that the ultimate question can still as readily be answered by determining whether the de-

fendant did, or did not, have sufficient 'minimum contacts' in the forum state.").

Although I decline to adopt the *Zippo* test as a substitute for minimum contacts, this does not mean that a website's level of interactivity is irrelevant in deciding whether the exercise of jurisdiction is appropriate. The website's level of interactivity may be one component of a determination whether a defendant has availed itself purposefully of the benefits or privileges of the forum state. For example, a finding that a defendant uses its website to engage in repeated commercial transactions may support the exercise of personal jurisdiction, so long as there is a corresponding finding that the defendant is expressly targeting residents of the forum state and not just making itself accessible to everyone regardless of location. *See, e.g., Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1087 (9th Cir.2000) (interactivity is insufficient by itself; there must be "express aiming" at forum state); *B.E.E. International Ltd. v. Hawes,* 267 F.Supp.2d 477, 484–85 (M.D.N.C.2003); *Millennium Enterprises,* 33 F.Supp.2d at 921; *Hasbro, Inc. v. Clue Computing, Inc.,* 994 F.Supp. 34 (D.Mass. 1997). However, the ultimate question remains the same, that is, whether the defendant's contacts with the state are of such a quality and nature such that it could reasonably expect to be haled into the courts of the forum state.

### C.  *General Jurisdiction*

■ To meet the constitutional requirement for general jurisdiction, the defendant must have "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *NUCOR,* 28 F.3d at 580. A defendant's lack of physical presence in the forum state is not determinative. *Burger King,*

471 U.S. at 473–74, 476, 105 S.Ct. 2174; *Purdue Research Foundation,* 338 F.3d at 781. However, the defendant's contacts with the forum "must be so extensive to be tantamount" to the defendant's "being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [a Wisconsin] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation,* 338 F.3d at 787.

Plaintiff's argument that general jurisdiction exists in this case borders on the frivolous. Plaintiff has not alleged that defendant has an office in Wisconsin, that defendant does a substantial amount of business in Wisconsin or that agents of defendant spend any time in the state, much less substantial amounts. *See Helicopteros,* 466 U.S. at 411–12, 104 S.Ct. 1868. Instead, all but two of the alleged contacts relied on by plaintiff arise out of defendant's website. The combination of these contacts fails to come close to being continuous and systematic. *International Medical Group,* 312 F.3d at 847. With the exception of the book sale to one Wisconsin resident and the communication between the parties, all of the activities identified by plaintiff consist of nothing more than *potential* contacts. Further, although plaintiff characterizes defendant's internet-based activities as "soliciting" Wisconsin business, plaintiff has not alleged that defendant has done anything to target internet users in Wisconsin.

Plaintiff has cited no authority that would support a finding of general jurisdiction under facts similar to this case. Rather, courts have concluded repeatedly that the maintenance of a website does not provide a sufficient basis to subject a party to any suit in a particular state. *See Bird,* 289 F.3d at 874; *Bancroft & Masters,* 223

F.3d at 1086; *Panavision International,* 141 F.3d at 1320; *Vinten v. Jeantot Marine Alliances, S.A.,* 191 F.Supp.2d 642, 647 n. 10 (D.S.C.2002) (noting that as case law has developed on topic of personal jurisdiction and internet, majority of courts have rejected arguments to exercise jurisdiction on sole basis of accessibility to website in forum state); *Euromarket Designs,* 96 F.Supp.2d at 833; *Molnlycke Health Care AB v. Dumex Medical Surgical Prods. Ltd.,* 64 F.Supp.2d 448, 451 (E.D.Pa.1999).

If defendant were engaging in substantial sales to Wisconsin residents through its website, this could support a finding of general jurisdiction. *See Gator.com Corp. v. L.L. Bean, Inc.,* 341 F.3d 1072, 1078 (9th Cir.2003) (general jurisdiction properly exercised when defendant solicited business in forum state and targeted its advertising and sold its products to residents of forum state). However, defendant cannot seriously argue that *one* sale is a sufficient ground to hale defendant into a Wisconsin court for any suit.

■ The only case plaintiff cites in support of its general jurisdiction argument is *Decker v. Circus Circus Hotel,* 49 F.Supp.2d 743 (D.N.J.1999). In *Decker,* the court found that a website established the existence of jurisdiction because it concluded that "the defendants have effectively placed their hotel and its services into an endless stream of commerce." *Id.* at 748 (citing *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 559). Beyond its citation to *Decker,* plaintiff has failed to develop any argument that personal jurisdiction is appropriate in this case under a stream of commerce theory. In any event, in this circuit, the stream of commerce theory applies only in the context of specific jurisdiction. *Purdue Research Foundation,* 338 F.3d at 788–89. The doctrine has

no relevance to general jurisdiction analysis.

Defendant's website is accessible to anyone connected to the internet anywhere in the world. Under plaintiff's argument, defendant could be haled into court in any state for any controversy, regardless whether defendant had any contact with a resident of that state. This result would be inconsistent with the Supreme Court's understanding of the requirements of due process. In *World–Wide Volkswagen,* 444 U.S. at 293, 100 S.Ct. 559, the Court stated, "we have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution." Territorial boundaries remain significant even in the internet context. " 'Cyberspace' . . . is not some mystical incantation capable of warding off the jurisdiction of courts. . . . Just as our traditional notions of personal jurisdiction have proven adaptable to other changes in the national economy, so too are they adaptable to the transformations wrought by the Internet." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 510–11 (D.C.Cir.2002).

Because plaintiff has not met its burden of proving that defendant has engaged in continuous and systematic contacts with Wisconsin, defendant is not subject to general jurisdiction in this court.

### D. *Specific Jurisdiction*

In order to exercise specific jurisdiction, a court must find that the defendant has purposefully established minimum contacts with the forum state, that the cause of action arises out of or relates to those contacts and that the exercise of jurisdiction is constitutionally reasonable. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir.1997). The first and second part of this analysis require the court to

evaluate the relationship among the defendant, the forum state and the cause of action. *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). The Court has identified two ways in which minimum contacts may be established for the purpose of specific jurisdiction: (1) purposeful availment by the defendant of the benefits and protections of the forum state's laws, *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); or (2) harm to an individual within the state caused by the defendant when the harm is both intentional and aimed at the forum state, *Calder,* 465 at 788–90, 104 S.Ct. 1482. Plaintiff argues that both kinds of specific jurisdiction exist.

### 1. *Defendant's contacts with Wisconsin*

Plaintiff contends that the following contacts meet the constitutional standard for exercising specific jurisdiction: (1) defendant operates a consumer complaint forum that permits any internet user to post a consumer complaint about any company, and, for a fee, companies may post rebuttals to a complaint; (2) defendant sells the *Rip–Off Revenge Guide* on its website; (3) defendant sold a copy of the *Rip–Off Revenge Guide* to one Wisconsin resident; (4) defendant's website allows individuals to make donations to badbusinessbureau.com; (5) defendant offers to help coordinate class actions against companies about which consumers complain; (6) defendant sells advertising space on its website, and the purchaser may target its ad at a particular state; and (7) defendant and plaintiff discussed the Corporate Customer Advocacy Program via email and phone. Plt's Br., dkt. # 11 at 6–8. As indicated by this list, the only actual contacts are the one book sale and the communication between the parties.

### 2. *Purposeful availment*

■ The purposeful availment requirement is satisfied when the defendant purposefully establishes sufficient minimum contacts with the forum state to create a "substantial connection" between the defendant and the forum state. *Burger King Corp.,* 471 U.S. 462 at 475–76, 105 S.Ct. 2174; *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir.2000). A substantial connection is created when the defendant "purposefully avails itself of the privilege of conducting activities" in the forum. *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. The objective of the purposeful availment requirement is to provide predictability and give notice to the defendant that it is subject to suit in the forum state, so that the company "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected cots on to customers, or, if the risks are too great, severing its connection with the State." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559; *see also Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 572 (7th Cir.1986).

Plaintiff has failed to show how defendant has made such purposeful availment of the benefits of Wisconsin's laws that it could reasonably anticipate being haled into court in this state. As noted above, most of plaintiff's alleged contacts with Wisconsin are only potential contacts. Plaintiff has adduced no evidence that defendant has received any donations from Wisconsin citizens, that any Wisconsin businesses advertise on its website or that it has coordinated any class actions involving people from Wisconsin. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir.1997) (holding that accessibility of defendant's website in forum state was insufficient for establishing purposeful avail-

ment; although residents of forum state could have purchased services from defendant through the website, no business transactions took place); *see also GTE New Media Services,* 199 F.3d at 1349–50 (website may form basis for specific jurisdiction if defendant takes action to maximize usage of website in forum, markets website in forum, puts forum-specific content in website or has business plan that targets users within forum).

Although even solicitation of business in a state can support an exercise of personal jurisdiction, *Travelers Health Association v. Commonwealth of Virginia ex rel. State Corp. Commission,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), no evidence exists to show that defendant has done anything to target Wisconsin consumers. Defendant does not send mailings or unsolicited e-mails to the state. It does not advertise for its site within Wisconsin. *See Logan Productions,* 103 F.3d at 53 (specific jurisdiction proper when defendant advertised in specific trade magazines with Wisconsin subscribers, mailed newsletters to 144 Wisconsin residents, sold its products to at least twelve Wisconsin residents, entered into distributor agreement with Wisconsin company, and conducted dealer training in Wisconsin); *Metropolitan Life Insurance Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 572–73 (2d Cir.1996) (direct mail campaign within forum state supported finding of jurisdiction). The defendant's website is akin to an advertisement in a magazine with a national circulation; the defendant does not control who views it or responds to it. *See Sunbelt Corp. v. Noble, Denton & Associates, Inc.,* 5 F.3d 28, 33 n. 10 (3d Cir.1993) (advertisement in national periodical circulated in forum state insufficient to establish personal jurisdiction); *Singletary v. B.R.X., Inc.,* 828 F.2d 1135, 1136–37 (5th Cir.1987) (same).

The closest plaintiff comes to a showing of solicitation is defendant's exchanges with plaintiff about the Corporate Customer Advocacy Program. However, it is undisputed that it was plaintiff who contacted defendant without any prompting on the part of defendant. Further, no transaction occurred; plaintiff declined to participate in the program.

Defendant *has* had contact with various Wisconsin citizens who have posted consumer complaints on defendant's website. Again, however, plaintiff has not targeted Wisconsin citizens more than the citizens of any other state. More important, plaintiff has not shown what benefit or privilege from Wisconsin has incurred to defendant through the posting of these complaints.

What remains is the one book sale to a Wisconsin resident. The Supreme Court has held that a single contract may be sufficient to establish specific jurisdiction, so long as there is a "substantial connection" between the contract and the forum state. *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Even assuming the one book sale was sufficient by itself, plaintiff would have to show that there was a nexus between the sale and the cause of action.

The nexus requirement gives potential defendants control over the "jurisdictional consequences of their actions." *Hyatt,* 302 F.3d at 716. This requirement is not met by a loose connection between the defendant's contacts and the forum state. *RAR,* 107 F.3d at 1278. "[S]pecific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state.' " *Id.* (quoting *Saw-*

*telle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995)).

The book sale has no connection with this cause of action. Plaintiff is not suing plaintiff for breach of contract or fraud but for defamation and trademark infringement arising from the consumer complaints and other references to plaintiff on the website. The only relationship between the sale and the lawsuit is that the sale occurred through the website. Such a tenuous connection is insufficient to show that the lawsuit "directly arose" from this sale.

### 3. *Effects test*

■ The effects test is satisfied when the plaintiff alleges that the defendant committed an intentional tort expressly aimed at the forum state; the actions caused harm, the brunt of which was suffered in the forum state; and the defendant knew that the effects of its actions would be suffered primarily in the forum state. *Calder,* 465 U.S. at 788–90, 104 S.Ct. 1482; *Wallace v. Herron,* 778 F.2d 391, 394 (7th Cir.1985). In *Calder,* a California actress filed a lawsuit for libel and invasion of privacy in California against the publisher and writer of a tabloid news article, both of whom lived and worked in Florida. Upholding the exercise of jurisdiction, the Court emphasized the geographic "focal point" of the defendants' conduct:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.

*Id.* at 788–89, 104 S.Ct. 1482. The Court emphasized that the defendants had aimed their actions expressly at California and knew that the "potentially devastating" effects of their article would be felt primarily in the state. *Id.* at 789–90, 104 S.Ct. 1482. The defendants knew that plaintiff lived and worked in California and that the largest number of subscribers lived in California. *Id.*

■ Plaintiff contends that the express aiming element of the effects test is met because its trademarked names appear in headings and text of allegedly defamatory consumer complaints posted on defendant's website. Plaintiff alleges that defendant solicits and posts these headings and the corresponding complaints.

The express aiming requirement under the effects test insures that personal jurisdiction comports with traditional due process principles. In *Wallace,* 778 F.2d at 395, the Court of Appeals for the Seventh Circuit emphasized that the effects test was not intended to supplant traditional due process analysis. Rather, it is a means of evaluating the defendant's relevant contacts; the plaintiff must still show that the defendant purposefully established minimum contacts with the forum state. *Id.* The court stated, "[w]e do not believe that the Supreme Court, in *Calder,* was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id.* at 394

Plaintiff fails to allege any facts demonstrating that defendant expressly aimed its activities at Wisconsin. The facts of record do not indicate that defendant creates the text of the consumer complaints. It is the *consumers* that are using plaintiff's name and making allegedly defamatory statements. If defendant is not creating

the text, then defendant is not purposefully directing its activities toward any particular company or state. *Nelson v. Bulso*, 149 F.3d 701, 704 (7th Cir.1998) (because defendant himself did not direct re-publication of allegedly defamatory material, such material could not serve as basis to exercise personal jurisdiction over defendant).

Although plaintiff's allegations are not entirely clear, it could be inferred that plaintiff is alleging that *defendant* is creating the headings for the consumer complaints and that these headings themselves constitute trademark infringement. However, I agree with the majority of courts that simply placing the name of trademark on a website is not enough to show that a defendant has intentionally targeted the forum state. *E.g., Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 400 (4th Cir.2003); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir.2003); *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1020 (9th Cir.2002); *Neogen Corp.*, 282 F.3d at 890; *Panavision International*, 141 F.3d at 1322; *Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295, 301 (S.D.N.Y.1996). To hold otherwise would subject millions of internet users to suit in the state of any company whose trademarked name they happen to mention on a website.

In its complaint, plaintiff alleges that defendant created metatags associated with its website that included plaintiff's trademarked names. Plaintiff does not explain the function of the metatags, how they work or how they support the exercise of specific jurisdiction. Accordingly, I conclude that plaintiff has waived this argument. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999) ("Arguments that are

not developed in any meaningful way are waived."); *see also Finance Investment Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 528 (7th Cir.1998); *Colburn v. Trustees of Indiana University*, 973 F.2d 581, 593 (7th Cir.1992) ("[plaintiffs] cannot leave it to this court to scour the record in search of factual or legal support for this claim"); *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Bd.*, 957 F.2d 302, 305 (7th Cir.1992) (court has "no obligation to consider an issue that is merely raised, but not developed, in a party's brief").

Even if plaintiff could meet the express aiming requirement, plaintiff has failed to show that it has suffered the brunt of its injury in Wisconsin. Plaintiff suggest that a court may assume that its injury is in Wisconsin because its principal place of business is in Wisconsin. Plaintiff cites one case that supports this assumption, *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F.Supp.2d 824, 833 (N.D.Ill. 2000). *Euromarket Designs* was a suit for trademark infringement in which the district court found the plaintiff had met the injury requirement of the effects test by showing that its principal place of business was in the forum state. The court made this finding without explaining why the principal place of business is invariably the locus of an injury to the business.

When an injured party is an individual, it is reasonable to infer that the brunt of the injury will be felt in the state in which he or she resides. This is not necessarily the case when the injured party is a corporation. "A corporation does not suffer harm in a particular geographic location in the same sense that an individual does." *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir.1993). *Calder*, 465 U.S. at 789, 104 S.Ct. 1482, still requires that the harm be particularized to the forum state. *see Janmark*, 132 F.3d at

1202. Even if a corporation has its principal place of business in the forum state, it does not follow necessarily that it makes more sales in that state than any other or that harm to its reputation will be felt more strongly in that state.

Thus, I agree with the majority of courts that merely identifying the plaintiff's principal place of business is not enough without more to show that the plaintiff has suffered the brunt of an injury in the state. *See, e.g., Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir.2002); *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir.1998); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir.1991); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773 (5th Cir.1988) (the location of plaintiff's place of business is a "mere fortuity" when other minimum contacts are not established).

Despite plaintiff's protestations to the contrary, this conclusion is consistent with circuit precedent. Although the Court of Appeals for the Seventh Circuit has not addressed this issue, plaintiff relies on *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir.1994), to support its argument under the effects test. In *Colts*, the court of appeals held that an Indiana court could exercise jurisdiction over the defendants because the Indianapolis Colts trademark that plaintiffs sought to protect was used primarily in Indiana, making it reasonable to infer that the injury would be felt primarily in Indiana. In addition, the court noted that the defendants would know that the brunt of the injury would be felt in the state because the team's home is in Indianapolis: "By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defen-

dants assumed the risk of injuring valuable property located in Indiana." *Id.*

The facts in *Colts* are a far cry from the situation in this case. It would be perfectly reasonable to infer that a plaintiff would feel the brunt of the injury in the forum state when the claim is trademark infringement of a sports team based in the forum state. A large number of the team's fans would be located in the forum state. Much if not most of the team's revenue would be generated from the forum state's citizens. Plaintiff does not have the same obvious connection with Wisconsin that the Indianapolis Colts have with Indiana.

In sum, plaintiff has failed to meet its burden to show the existence of specific jurisdiction under either the purposeful availment test or the effects test. It is therefore unnecessary to consider whether the exercise of jurisdiction would be improper under the reasonableness factors set forth in *World–Wide Volkswagen*, 444 U.S. at 294, 299, 100 S.Ct. 559.

## ORDER

IT IS ORDERED that defendant badbusinessbureau.com's motion to dismiss for lack of personal jurisdiction is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.